UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENJY ORELLANA, *et al.*,<br><br>        Plaintiffs,<br><br>  v.<br><br>REAL INNOVATIVE CONSTRUCTION, LLC, *et al.*,<br><br>        Defendants. | 1:18-CV-8396-VEC |

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS BY DEFENDANTS ECI CONTRACTING, LLC AND KIERAN KEAVENEY AND IN OPPOSITION TO THE MOTION TO DISMISS BY DEFENDANT T.B.C GROUP LTD.**

Thomas J. Lamadrid
EISNER & DICTOR, P.C.
*Attorneys for Plaintiffs*
39 Broadway, Suite 1540
New York, New York 10006
thomas@eisnerdictor.com
P: (212) 473-8700
F: (212) 473-8705

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

FACTS ................................................................................................................................................ 2

ARGUMENT ...................................................................................................................................... 7

    I.    The Court should accept the factual allegations in the Complaint and draw all reasonable inferences in Plaintiffs' favor. ........................................................................ 7

    II.   Plaintiffs' Complaint states claims against each of the Defendants as joint employers under the FLSA and NYLL. ................................................................................. 8

        A.   Plaintiffs' Complaint alleges facts sufficient to state a claim that ECI and TBC were their joint employers. ....................................................................................... 11

        B.   Plaintiffs' Complaint alleges facts sufficient to state a claim that Keaveney was their joint employer. ................................................................................................ 13

CONCLUSION ................................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .................................................................................... 8

Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132 (2d Cir. 2008) ................ 10

Bonnette v. California Health and Welfare Agency, 704 F.2d 1465 (9th Cir. 1983) ................... 10

Carter v. Dutchess Community College, 735 F.2d 8 (2d Cir. 1984) ........................................ 9, 10

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ..................................................... 8

Falk v. Brennan, 414 U.S. 190 (1973) ......................................................................................... 8

Garcia v. JonJon Deli Grocery Corp., No. 13 Civ. 8835 AT, 2015 WL 4940107
    (S.D.N.Y. Aug. 11, 2015) ...................................................................................................... 9

Hart v. Rick's Cabaret Intern., Inc., 967 F.Supp.2d 901 (S.D.N.Y. 2013) .................................. 9

Herman v. RSR Sec. Services Ltd., 172 F.3d 132 (2d Cir. 1999) ........................................... 8, 10

Inclan v. New York Hospitality Group, Inc., 95 F.Supp.3d 490 (S.D.N.Y. 2015) ........................ 9

Irizarry v. Catsimatidis, 722 F.3d 99 (2d Cir. 2013) .................................................................... 9

Jones v. SCO Family of Services, 202 F.Supp.3d 345 (S.D.N.Y. 2016) ...................................... 8

Kittay v. Kornstein, 230 F.3d 531 (2d Cir. 2000) ......................................................................... 7

Lopez v. Acme Am. Envtl. Co., No. 12 Civ. 511(WHP), 2012 WL 6062501
    (S.D.N.Y. Dec. 6, 2012) ....................................................................................................... 12

Santana v. Fishlegs, LLC, No. 13 Civ. 01628(LGS), 2013 WL 5951438
    (S.D.N.Y. Nov. 7, 2013) ....................................................................................................... 13

Serrano v. I. Hardware Distribs., Inc., No. 14-cv-2488 (PAC), 2016 WL 1441469
    (S.D.N.Y. July 27, 2015) ...................................................................................................... 14

Serrano v. I. Hardware Distributors, Inc., No. 14 CIV. 2488 (PAC), 2016 WL 1441469
    (S.D.N.Y. Apr. 7, 2016) ....................................................................................................... 14

Sikiotis v. Vitesse Worldwide Chaufeeured Services, Inc., 147 F.Supp.3d 39 (D. Conn. 2015)... 8

Xue Lian Lin v. Comprehensive Health Management, Inc., No. 08 Civ. 6519(PKC),
    2009 WL 976835 (S.D.N.Y. Apr. 9, 2009) ............................................................................ 15

Zheng v. Liberty Apparel Co., 355 F.3d 61 (2d Cir. 2003) ..................................... 9, 10, 12, 15

Zhong v. August August Corp., 498 F.Supp.2d 625 (S.D.N.Y. 2007) ...................................... 7, 8

**Statutes**

29 U.S.C. § 203 ................................................................................................................. 3, 8, 9

NYLL § 190 ............................................................................................................................. 9

NYLL § 651 ............................................................................................................................. 9

**Rules**

Fed. R. Civ. P. 12 ..................................................................................................................... 8

Fed. R. Civ. P. 8 ....................................................................................................................... 7

**PRELIMINARY STATEMENT**

Plaintiffs submit this consolidated Memorandum of Law in opposition to the motion by defendants ECI Contracting, LLC d/b/a ECI Services ("**ECI**") and Kieran Keaveney (ECI and Keaveney collectively the "**ECI Defendants**") and the motion by defendant T.B.C Group Ltd. ("**TBC**") (TBC and the ECI Defendants collectively "**Defendants**") to dismiss plaintiffs' Amended Complaint (the "**Complaint**" or "**Am. Compl.**"; ECF Doc. # 89) pursuant to Rule 12(b)(6) and/or Rule 8 of the Federal Rules of Civil Procedure.

Plaintiffs, former concrete and rebar employees of defendants, have brought this action pursuant to the Fair Labor Standards Act ("**FLSA**") and New York Labor Law ("**NYLL**") to recover unpaid minimum, straight-time, and overtime wages; spread-of-hours premiums; liquidated damages; and notice and recordkeeping damages, as well as costs and attorneys' fees, from defendants for work performed at three construction sites in New York City. The work relevant to the instant motion was performed by plaintiffs Kenjy Orellana, Nestor Reyes, Rene I. Ayala, Alberto Ramon Morales Pombo, Carlos M. Morocho, Luis Zaruma, Maximino Flores, and Jhojam Armando Fierro Medina (collectively "**Plaintiffs**") at the 164 West 74th Street, New York, New York 10023 (the "**74th Street Site**").

For the reasons set forth below, plaintiffs respectfully submit that the motions to dismiss the Amended Complaint by the ECI Defendants and TBC should be denied in their entirety. Plaintiffs have sufficiently alleged in the Complaint that ECI, TBC, and Keaveney employed Plaintiffs within the meaning of the FLSA and NYLL. In particular, Plaintiffs have alleged facts sufficient to state an employment relationship with ECI, TBC, and Keaveney under the economic realities test.

1

**FACTS**

For different periods, depending on the plaintiff, between on or about April 20, 2018, and on or about July 20, 2018, plaintiffs performed concrete and rebar work for Defendants, including non-moving defendants, at three construction sites in New York City. Am. Compl. ¶ 2. Relevant here is the work performed by Kenjy Orellana, Nestor Reyes, Rene I. Ayala, Alberto Ramon Morales Pombo, Carlos M. Morocho, Luis Zaruma, Maximino Flores, and Jhojam Armando Fierro Medina ("Plaintiffs") at the 74th Street Site between April 20, 2018, and June 15, 2018, where they were jointly employed by defendants Real Innovative Construction, LLC, Andy Garcia, Carlos Morales, ECI Contracting, LLC d/b/a ECI Services, the ECI Defendants, and TBC. Am. Compl. ¶¶ 2, 4, 7, 90, 97, 104, 110, 117, 124, 252. Throughout Plaintiffs' employment with Defendants, Plaintiffs worked in excess of 40 hours each week, but Defendants Failed to pay plaintiffs at one and one-half their regular rate for all hours worked over 40 in a week. Am. Compl. ¶¶ 10, 89, 95, 102, 108, 115, 122, 129, 255, 257, 266. Defendants have failed to pay Plaintiffs any wages for, depending on the plaintiff, between one and three weeks of work. Am. Compl. ¶¶ 11, 84, 91, 98, 111, 118, 254. Plaintiffs worked shifts in excess of 10 hours a day, but Defendants failed to pay Plaintiffs spread-of-hours premiums. Am. Compl. ¶ 12. Defendants never provided Plaintiffs with wage notices or wage statements. Am. Compl. ¶ 13.

Defendant ECI is a limited liability company organized under the laws of New York State and a former employer of the Plaintiffs at the 74th Street Site. Am. Compl. ¶ 56. Defendant Keaveney is a principal of defendant ECI and a former employer of the Plaintiffs at the 74th Street Site. Am. Compl. ¶ 57. Beginning around at least April 20, 2018, the ECI Defendants have performed related activities through unified operations or common control with the common purpose of operating a business that provides construction services to the 74th Street Site. Am. Compl. ¶ 65. Since at least 2018, the ECI Defendants have constituted an enterprise engaged in

commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s)(1), with a gross annual volume of sales made or business done of not less than $500,000 and employees engaged in commerce that handle or otherwise work on goods and materials that have been moved in or produced for commerce. Am. Compl. ¶ 66.

Defendant TBC is a business corporation organized under the laws of New York and a former employer of the Plaintiffs at the 74th Street Site. Am. Compl. ¶ 59. Beginning around at least April 20, 2018, TBC has performed related activities through unified operations or common control with the common purpose of operating a business that provides construction services to the 74th Street Site. Am. Compl. ¶ 69. Since at least 2018, TBC has constituted an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s)(1), with a gross annual volume of sales made or business done of not less than $500,000 and employees engaged in commerce that handle or otherwise work on goods and materials that have been moved in or produced for commerce. Am. Compl. ¶ 70. Agents of TBC held themselves out as agents of the ECI Defendants at the 74th Street Site. Am. Compl. ¶ 73. TBC and ECI were understood to be interchangeable at the worksite. (Garcia Dep. 16.)

Beginning around at least April 20, 2018, the ECI Defendants and TBC contracted with defendant Real Innovative Construction, LLC, to provide concrete and rebar labor to the 74th Street Site. Am. Compl. ¶¶ 67, 71. The building permit for the work Plaintiffs performed at the 74th Street Site was issued to defendant Keaveney as general contractor and principal of ECI. Lamadrid Decl. ¶ 3, Ex. 2. Defendant Andy Garcia, a principal of defendant Real Innovative Construction, LLC, testified in his deposition that an Aaron Stevens served as the project manager

of the 74th Street Site as an agent of TBC and/or ECI. Garcia Tr.[1] 15-16. Garcia explained that he understood TBC and ECI to be interchangeable and that Aaron Stevens was an agent of both. Garcia Tr. 16. Aaron Stevens and others wore hardhats identifying them as ECI agents. Garcia Tr. 23. Aaron Stevens supervised and directed Plaintiffs' work at the 74th Street Site, had the authority to fire Plaintiffs from their employment at the 74th Street Site, and determined the work schedules of Plaintiffs. Garcia Tr. 22-24, 28-29. Aaron Stevens was aware of Plaintiffs' pay rates and had some involvement in the payment and calculation of wages to Plaintiffs. Garcia Tr. 47-48, 80.

The ECI Defendants and TBC employed plaintiffs at the 74th Street Site within the meaning of "employ" under the FLSA and NYLL. Am. Compl. ¶ 68, 72. The ECI Defendants and TBC had the authority to fire plaintiffs from their work at the 74th Street Site. *Id.* The ECI Defendants and TBC had and exercised the authority to set plaintiffs work schedule at the 74th Street Site. *Id.* The ECI Defendants and TBC had the authority and exercised the authority to supervise and direct plaintiffs' work at the 74th Street Site. *Id.* The ECI Defendants and TBC had knowledge of plaintiffs pay rates at the 74th Street Site. *Id.* Plaintiffs used the premises and equipment of the ECI Defendants and TBC to perform their work at the 74th Street Site. *Id.* The business of the ECI Defendants and TBC at the 74th Street Site could shift from one sub-contractor to another. *Id.* Plaintiffs work at the 74th Street Site was a discrete line-job that was integral to the ECI Defendants' process of production at the 74th Street Site. *Id.*  Plaintiffs worked exclusively or predominantly for the ECI Defendants and TBC at the 74th Street Site. *Id.*

Between around April 20, 2018, and around June 15, 2018, the ECI Defendants and TBC employed plaintiff Kenjy Orellana to work at the 74th Street Site. Am. Compl. ¶ 83. The ECI

---

[1] The cited portions of the Transcript of the Deposition of Defendants Andy Garcia are attached as Exhibit 1 to the Declaration of Thomas J. Lamadrid.

Defendants and TBC failed to pay Orellana any wages for approximately one week and two days of work he performed at the 74th Street Site. Am. Compl. ¶ 84. Throughout his employment at the 74th Street Site, Orellana's regular rate of pay was $25 an hour. Am. Compl. ¶ 85. Throughout his employment with Defendants, Orellana worked in excess of 40 hours a week, but Defendants failed to pay him at his overtime rate of one and one-half times his regular rate for all hours worked in excess of 40 in a week. Am. Compl. ¶ 89.

Between around April 20, 2018, and June 15, 2018, the ECI Defendants and TBC employed plaintiff Nestor Reyes to work at the 74th Street Site. Am. Compl. ¶ 90. The ECI Defendants, and TBC failed to pay Reyes any wages for approximately two weeks of work he performed at the 74th Street Site. Am. Compl. ¶ 91. Throughout his employment with Defendants, Reyes worked in excess of 40 hours a week, but Defendants failed to pay him at his overtime rate of one and one-half times his regular rate for all hours worked in excess of 40 in a week. Am. Compl. ¶ 95.

Between around May 1, 2018, and around June 15, 2018, the ECI Defendants and TBC employed plaintiff Rene I. Ayala to work at the 74th Street Site. Am. Compl. ¶ 97. The ECI Defendants and TBC failed to pay Ayala any wages for approximately one week of work he performed at the 74th Street Site. Am. Compl. ¶ 98. Throughout his employment with Defendants, Ayala worked in excess of 40 hours a week, but Defendants failed to pay him at his overtime rate of one and one-half times his regular rate for all hours worked in excess of 40 in a week. Am. Compl. ¶ 102.

Between around May 1, 2018, and around June 15, 2018, the ECI Defendants and TBC employed plaintiff Alberto Ramon Morales Pombo to work at the 74th Street Site. Am. Compl. ¶ 104. Throughout his employment with Defendants, Morales Pombo worked in excess of 40 hours

a week, but Defendants failed to pay him at his overtime rate of one and one-half times his regular rate for all hours worked in excess of 40 in a week. Am. Compl. ¶ 108.

Between around May 1, 2018, and June 15, 2018, the ECI Defendants and TBC employed plaintiff Carlos M. Morocho to work at the 74th Street Site. Am. Compl. ¶ 110. The ECI Defendants and TBC failed to pay Morocho any wages for approximately one week of work performed at the 74th Street Site. Am. Compl. ¶ 111. Throughout his employment with Defendants, Morocho worked in excess of 40 hours a week, but Defendants failed to pay him at his overtime rate of one and one-half times his regular rate for all hours worked in excess of 40 in a week. Am. Compl. ¶ 115.

Between around May 1, 2018, and around June 15, 2018, the RIC Defendants, the ECI Defendants, and TBC employed plaintiff Luis Zaruma to work at the 74th Street Site. Am. Compl. ¶ 117. The RIC Defendants, the ECI Defendants, and TBC failed to pay Zaruma any wages for approximately one week of work he performed at the 74th Street Site. Am. Compl. ¶ 118. Throughout his employment with Defendants, Zaruma worked in excess of 40 hours a week, but Defendants failed to pay him at his overtime rate of one and one-half times his regular rate for all hours worked in excess of 40 in a week. Am. Compl. ¶ 122.

Between around May 15, 2018, and June 15, 2018, the ECI Defendants and TBC employed plaintiff Maximino Flores to work at the 74th Street Site. Am. Compl. ¶ 124. The ECI Defendants and TBC failed to pay Flores any wages for approximately one week of work he performed at the 74th Street Site. Am. Compl. ¶ 125. Throughout his employment with Defendants, Flores worked in excess of 40 hours a week, but Defendants failed to pay him at his overtime rate of one and one-half times his regular rate for all hours worked in excess of 40 in a week. Am. Compl. ¶ 129.

Between around April 20, 2018, and June 29, 2018, the ECI Defendants and TBC employed plaintiff Jhojam Armando Fierro Medina to work at the 74th Street Site. Am. Compl. ¶ 252. The ECI Defendants and TBC failed to pay Fierro Medina any wages for approximately one and one-half weeks of work he performed at the 74th Street Site. Am. Compl. ¶ 254. Throughout his employment with Defendants, Fierro Medina worked in excess of 40 hours a week, but Defendants failed to pay him at his overtime rate of one and one-half times his regular rate for all hours worked in excess of 40 in a week. Am. Compl. ¶ 255.

## ARGUMENT

Defendants' motions to dismiss the Complaint should be denied in their entirety. The Court should accept all the allegations as true and draw all reasonable inferences in favor of Plaintiffs. As discussed below, Plaintiffs have sufficiently alleged, and demonstrated, that ECI, TBC, and Keaveney were joint employers of Plaintiffs at the 74th Street Site for purposes of the FLSA and NYLL. Plaintiffs have alleged facts sufficient to show that ECI, TBC, and Keaveney were joint employers of Plaintiffs as an economic reality. Moreover, testimony from defendant Andy Garcia supports these allegations.

**I.    The Court should accept the factual allegations in the Complaint and draw all reasonable inferences in Plaintiffs' favor.**

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) requires "a plaintiff to disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Zhong v. August August Corp.*, 498 F.Supp.2d 625, 629 (S.D.N.Y. 2007) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)) (internal quotation marks omitted).

7

"To survive a motion to dismiss [pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure], 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Jones v. SCO Family of Services*, 202 F.Supp.3d 345, 347 (S.D.N.Y. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 12(b)(6). "Although detailed allegations are not required, a claim will be found facially plausible only if 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sikiotis v. Vitesse Worldwide Chaufeeured Services, Inc.*, 147 F.Supp.3d 39, 43 n.2 (D. Conn. 2015) (quoting *Iqbal*, 566 U.S. at 678). "[T]he Court construes the complaint liberally, 'accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.'" *Zhong v. August August Corp.*, 498 F.Supp.2d 625, 628 (S.D.N.Y. 2007) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

**II.     Plaintiffs' Complaint states claims against each of the Defendants as joint employers under the FLSA and NYLL.**

To be held liable under the FLSA, a person must be an "employer." *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citing 29 U.S.C. § 203(d)). The FLSA's definition of "[e]mploy' includes to suffer or permit to work," and an "'employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *Zhong*, 498 F.Supp.2d at 628 (citing 29 U.S.C. §§ 203(g) and 203(d)); *see also Herman*, 172 F.3d at 139. The Supreme Court has emphasized the "expansiveness" of the FLSA's definition of employer. *Herman*, 172 F.3d at 139 (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). "Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national

8

economy." *Herman*, 172 F.3d at 139 (quoting *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984)).

Similarly, the NYLL broadly defines "employer" as including "any person . . . employing any individual in any occupation, industry, trade, or service" or "any individual . . . acting as employer." NYLL §§ 190(3), 651(6).

The statutory standard for employer status under the NYLL is nearly identical to that of the FLSA. *Hart v. Rick's Cabaret Intern., Inc.*, 967 F.Supp.2d 901, 940 (S.D.N.Y. 2013) (citing 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."); NYLL § 190(3)). "Although neither the New York Court of Appeals nor the Second Circuit has decided whether the tests for 'employer' status are the same under the FLSA and the NYLL, [federal] district courts in this Circuit have consistently interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." *Garcia v. JonJon Deli Grocery Corp.*, No. 13 Civ. 8835 AT, 2015 WL 4940107, at *3 (S.D.N.Y. Aug. 11, 2015) (internal quotation marks and citations omitted) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013); *Inclan v. New York Hospitality Group, Inc.*, 95 F.Supp.3d 490, 511 (S.D.N.Y. 2015); *see also Hart*, 967 F.Supp.2d at 940 (". . . there is no case law to the contrary. The Court will follow the weight of authority among district courts in this Circuit and apply the economic reality analysis to both statutes.").

A case-by-case analysis is required for determining whether a defendant is a joint employer under the FLSA and NYLL because of the statutes' broad definitions. *See Carter*, 735 F.2d at 12 n.1. In determining whether a defendant is a plaintiff's joint employer, the Court looks to the circumstances of the whole activity viewed in light of the "economic reality." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003) (internal quotation marks omitted) (citations omitted).

9

Under the so-called "economic reality" test, no one factor is dispositive; instead, the Court looks at the circumstances as a whole. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 68 (2d Cir. 2003) ("we have never suggested that, in analyzing joint employment, the four *Carter* factors alone are relevant, and that other factors that bear on the relationship between workers and potential joint employers should be ignored"); *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 143 (2d Cir. 2008) (concluding that the different factors the courts rely on are "a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA").

In *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), the Second Circuit provided a non-exhaustive list of factors to aid in determining whether an alleged employer had "formal" control over its alleged employees. The so-called *Carter* factors include whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12 (quoting *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)); *see also Herman v. RSR Security Services Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999) (applying the *Carter* factors to determine whether defendant was a joint employer).

In *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003), the Second Circuit provided six additional factors to aid in determining whether an alleged joint employer had "functional" control. The Second Circuit found that the District Court, on remand, should look at the following factors: (1) whether the defendant's premises and equipment were used for the plaintiff's work; (2) whether the defendant had a business that could or did shift as a unit from one

putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to the defendant's process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the defendant or its agents supervised the plaintiff's work; and (6) whether plaintiffs worked exclusively or predominantly for the defendants. *Zheng*, 355 F.3d at 72-76.

### A. Plaintiffs' Complaint alleges facts sufficient to state a claim that ECI and TBC were their joint employers.

Applying the economic realities test to the allegations in the Complaint, Plaintiffs have alleged facts sufficient to state a claim against ECI and TBC as Plaintiffs' joint employers pursuant to the FLSA and NYLL. In addition to generally alleging that ECI and TBC employed them, Plaintiffs have alleged and demonstrated that ECI and TBC had formal control pursuant to the *Carter* factors. As alleged in the Complaint, ECI and TBC had the authority to fire plaintiffs from their work at the 74th Street Site. Am. Compl. ¶¶ 68, 72. Moreover, defendant Andy Garcia testified that an agent of TBC and ECI and had the authority to fire Plaintiffs from their employment at the 74th Street Site. Garcia Tr. 22-24, 28-29. As alleged, ECI and TBC supervised and directed Plaintiffs' work at the 74th Street Site and controlled the Plaintiffs' schedules. Am. Compl. ¶¶ 68, 72. Moreover, defendant Andy Garcia testified that an agent of TBC and ECI supervised and directed Plaintiffs' work at the 74th Street Site and determined Plaintiffs' work schedules. Garcia Tr. 22-24, 28-29. An agent of ECI and TBC shared the responsibility for supervising Plaintiffs' work equally with defendant Carlos Morales of Real Innovative Construction, LLC. Garcia Tr. 46. ECI and TBC also had knowledge of Plaintiffs' pay rates at the 74th Street Site. Am. Compl. ¶¶ 68, 72. Defendant Garcia also testified and indicated that an agent of ECI and TBC had some involvement in the calculation and payment of Plaintiffs' wages. Garcia Tr. 47-48, 80. ECI and TBC, then, go at least partway to satisfying the third *Carter* factor.

11

Accordingly, two *Carter* factors weigh heavily in favor of finding ECI and TBC joint employers, with a third factor at least partially supporting the finding.

In addition, Plaintiffs have alleged and demonstrated that ECI and TBC had functional control over Plaintiffs' employment pursuant to the *Zheng* factors. As alleged, the premises and equipment of ECI and TBC were used for the Plaintiffs' work. Am. Compl. ¶¶ 68, 72. In particular, defendant Garcia testified that ECI and TBC provided half of the equipment used by Plaintiffs at the 74th Street Site. Garcia Tr. 27-28. Plaintiffs' work at the 74th Street Site was a discrete line-job that was integral to the ECI Defendants' process of production at that site. Am. Compl. ¶¶ 68, 72. The business of ECI and TBC at the 74th Street Site could shift from one sub-contractor to another. Am. Compl. ¶¶ 68, 72. As discussed above, ECI and TBC supervised Plaintiffs' work. Finally, the Plaintiffs worked exclusively or predominantly for ECI and TBC at the 74th Street Site, working using Defendants' premises and equipment on a full time on a schedule set by Defendants. Am. Compl. ¶¶ 68, 72. Accordingly, five out of the six *Zheng* factors weigh strongly in favor of ECI and TBC being considered joint employers.

Defendants rely on *Lopez v. Acme Am. Envtl. Co.*, No. 12 Civ. 511(WHP), 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012). There, plaintiffs sued their direct employer as well as its two co-owners and several additional corporations owned by the same two co-owners. ." *Id.* at *1. Each company provided a different service needed by commercial kitchens, such as cleaning or appliance repair. ." *Id.* at *4. Unlike here, the plaintiffs there pursued the corporations in question on a single integrated enterprise theory. *Id.* The court ruled that was an insufficient allegation because "companies that are part of an "integrated enterprise" or "engaged in a joint venture" may nevertheless employ separate people and, absent control, are not liable for the separate employees of joint ventures." *Id.* Unlike here, the *Lopez* plaintiffs did not allege that any of the defendants

12

beyond the direct employer exercised any degree of control over their work. *Lopez*, 2012 WL 6062501 at *4. Here, on the other hand, Plaintiffs have alleged facts sufficient to show formal and functional control over Plaintiffs' employment at the 74th Street Site.

Defendants also rely on *Santana v. Fishlegs, LLC*, No. 13 Civ. 01628(LGS), 2013 WL 5951438 (S.D.N.Y. Nov. 7, 2013). The *Santana* plaintiffs worked at two of several restaurants owned by celebrity chef David Burke. *Id.* at *1. Like the *Lopez* plaintiffs, the *Santana* plaintiffs were pursuing the other corporate defendants on a theory that they formed a "single integrated enterprise". *Id.* at *7. Neither the court nor the *Santana* plaintiffs applied the *Carter* or *Zheng* factors.

### B. Plaintiffs' Complaint alleges facts sufficient to state a claim that Keaveney was their joint employer.

Applying the economic realities test to the allegations in the Complaint, Plaintiffs have alleged facts sufficient to state a claim against Keaveney as Plaintiffs' joint employers pursuant to the FLSA and NYLL. In addition to generally alleging that Keaveney employed them, Plaintiffs have alleged that Keaveney had formal control pursuant to the *Carter* factors. As alleged in the Complaint, Keaveney and ECI (referred to collectively in the Complaint and here as the "ECI Defendants") had the authority to fire Plaintiffs from their work at the 74th Street Site. Am. Compl. ¶ 68. Defendant Andy Garcia testified that an agent of ECI, and therefore an agent of ECI's principal, Keaveney, had the authority to fire Plaintiffs from their employment at the 74th Street Site. Garcia Tr. 22-24, 28-29. As ECI's principal, surely Keaveney also had the authority to fire Plaintiffs. As alleged, Keaveney and ECI supervised and directed Plaintiffs' work at the 74th Street Site and controlled the Plaintiffs' schedules. Am. Compl. ¶ 68. Moreover, defendant Andy Garcia testified that an agent of ECI, and therefore of Keaveney, supervised and directed Plaintiffs' work at the 74th Street Site and determined Plaintiffs' work schedules. Garcia Tr. 22-24, 28-29.

Keaveney and ECI also had knowledge of Plaintiffs' pay rates at the 74th Street Site. Am. Compl. ¶ 68; *see also* Garcia Tr. 47-48, 80. Accordingly, two *Carter* factors weigh heavily in favor of finding ECI and TBC joint employers, with a third factor at least partially supporting the finding.

In addition, Plaintiffs have alleged that Keaveney had functional control over Plaintiffs' employment. As alleged, the premises and equipment of ECI, and therefore of its principal, Keaveney, were used for the Plaintiffs' work. Am. Compl. ¶ 68; *see also* Garcia Tr. 27-28. As discussed above, Keaveney had the authority to supervis Plaintiffs' work. Moreover, the work permit under which Plaintiffs performed their work at the 74th Street Site was issued to Keaveney as general contractor and principal of ECI. Lamadrid Decl. ¶ 3, Ex. 2. Keaveney, then, had control and authority over the work site and the work performed under the permit.

Defendants rely on *Serrano v. I. Hardware Distribs., Inc.,* No. 14-cv-2488 (PAC), 2016 WL 1441469 (S.D.N.Y. July 27, 2015). In *Serrano*, the plaintiffs brought a claim against their employer, a hardware store, as well as its two owners. *Id.* at *1. The plaintiffs did not allege specific actions taken by the owners beyond their status as owners. *Id.* at *3. The court ruled that in absence of such allegations no valid complaint was made and granted a motion to dismiss the claims against the two owners. *Id.* The plaintiffs were given leave to amend by the court, and in an amended complaint specifically alleged that one owner acted as a manager by setting schedules and determining pay. Those allegations were sufficient to survive a new motion to dismiss against that owner. *Serrano v. I. Hardware Distributors, Inc.*, No. 14 CIV. 2488 (PAC), 2016 WL 1441469, at *2 (S.D.N.Y. Apr. 7, 2016). In the instant case, specific allegations of have been made against Keaveney, including that he had the authority to fire Plaintiffs, had and exercised the authority to set plaintiffs work schedule had the authority and exercised the authority to supervise

14

and direct Plaintiffs' work. Am. Compl. ¶ 68. Those allegations satisfy more of the *Zheng* factors than did the successful post-amendment *Serrano* claim.

Defendants also rely on *Xue Lian Lin v. Comprehensive Health Management, Inc.*, No. 08 Civ. 6519(PKC), 2009 WL 976835 (S.D.N.Y. Apr. 9, 2009). In *Lin*, the plaintiffs did not allege any facts regarding the positions held by the individual defendants or the power they had to control plaintiffs' terms and conditions of employment. The complaint merely alleged that on information and belief, the individual defendants were employers within the meaning of the FLSA. *Id.* at 2. Here, on the other hand, Plaintiffs have alleged that Keaveney had the authority to fire Plaintiffs, had and exercised the authority to set plaintiffs work schedule had the authority and exercised the authority to supervise and direct plaintiffs' work. Am. Compl. ¶ 68. As discussed above, Plaintiffs have alleged facts sufficient to show Keaveney was a joint employer pursuant to the *Carter* and *Zheng* factor analysis.

## CONCLUSION

Accordingly, for the foregoing reasons, Plaintiffs respectfully submit that the Court should deny the motion to dismiss by the ECI Defendants and the motion to dismiss by TBC. Plaintiffs have sufficiently alleged facts showing that, as an economic reality, ECI, Keaveney, and TBC jointly employed Plaintiffs at the 74th Street Site. Moreover, the testimony of defendant Andy Garcia supports the allegations.

Dated: July 12, 2019  
      New York, New York

Respectfully submitted,

EISNER & DICTOR, P.C.  
*Attorneys for Plaintiffs*

By: _____  
Thomas J. Lamadrid  
39 Broadway, Suite 1540  
New York, New York 10006  
thomas@eisnerdictor.com  
T: (212) 473-8700  
F: (212) (473-8705

16